IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JONNI L. PETERSON, WILLE R.
PETERSON, and JULIE A.
SZCZESNIAK,

        Plaintiffs,

v.

MERSCORP HOLDINGS, INC.,
FEDERAL HOUSING FINANCE AGENCY,
as CONSERVATOR for THE FEDERAL
HOME LOAN MORTGAGE CORP.,
MERSCORP, INC., MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., AURORA BANK, FSB
f/k/a LEHMAN BROTHERS BANK FSB,
AURORA LOAN SERVICES, LCC, and
McCURDY & CANDLER, LLC,

        Defendants.

CIVIL ACTION NO.

1:12-cv-00014-JEC

## **ORDER AND OPINION**

This case is before the Court on plaintiffs' Motion for a
Temporary Restraining Order [2] and defendants' Motion to Dismiss
[3]. The Court has reviewed the record and the arguments of the
parties and, for the reasons set out below, concludes that
plaintiffs' Motion for a Temporary Restraining Order [2] should be
**DENIED** and the defendants' Motion to Dismiss [3] should be **GRANTED in
part** and **DENIED in part**.

<u>**BACKGROUND**</u>

This case arose from the foreclosure of plaintiffs' property. On February 7, 2007, Julie Szczesniak ("Szczesniak") purchased property for her niece, Jonni L. Peterson ("Jonni"), and Jonni's husband Wille R. Peterson ("Wille"), to be used as a primary residence (the "Property"). (Compl. [1] at ¶¶ 1-3, 32.) In order to purchase the property, Szczesniak applied for a residential mortgage loan from Primary Capital Advisors, LC ("Primary Capital"). (*Id.* at ¶ 33). To finish consummating the loan transaction, Szczesniak granted a Specific Power of Attorney to Jonni, which authorized Jonni to take appropriate action to complete the loan. (*Id.* at ¶ 35.) To this end, Jonni, as attorney-in-fact for Szczesniak, signed a promissory note in the principal sum of $236,000.00, in favor of Primary Capital (the "Note"). (*Id.* at ¶ 36.) Jonni also executed a security deed in favor of MERS as "nominee" for Primary Capital (the "Security Deed"). (*Id.* at ¶ 37.) Szczesniak subsequently conveyed the Property to herself and Jonni as joint tenants with survivorship rights. (Compl. [1] at ¶ 40.)

Apparently, sometime before 2009, Szczesniak defaulted on her obligations.[1] In January 2009, defendant McCurdy & Candler sent a

---

[1] Plaintiffs dispute that Szczesniak is not current on her loan obligations. (*See* Olson Aff. [3] at ¶¶ 9-10.) Defendants note that plaintiffs' last payment was made in April, 2011. (Defs.' Reply [6] at 1.) Plaintiffs never rebut this assertion, but instead accuse Mr.

letter to Szczesniak providing a Notice of Foreclosure Sale. (*Id.* at ¶ 44.) This letter included, as an enclosure, a copy of a "Notice of Sale under Power," which McCurdy & Candler sent to the Gwinnett Daily Post for publication. (*Id.* at ¶ 46.) Also in January 2009, defendant McCurdy & Candler sent another letter to Szczesniak, concerning an "Initial Communication Letter," which was meant to provide notice pursuant to the Fair Debt Collection Practices Act. (*Id.* at ¶ 48.) Plaintiffs allege that all of this correspondence falsely identified MERS as being the "secured creditor" of Szczesniak. (*Id.* at ¶¶ 45, 47, 49.)

Apparently, the foreclosure sale did not take place, because defendant McCurdy & Candler sent essentially the same three documents to Szczesniak two months later in March of 2009. (Compl. [1] at ¶¶ 50, 52, 54.) Plaintiffs contend that these documents also falsely identified MERS as her "secured creditor." (*Id.* at ¶¶ 51, 53, 55.) Then, in July 2009, defendant McCurdy & Candler again sent out the same three types of documents. (*Id.* at ¶¶ 56, 58, 60.) As before, these documents all identified MERS as Szczesniak's "secured creditor." (*Id.* at ¶¶ 57, 59, 61.)

On August 13, 2009, MERS executed a "Corporate Assignment of Mortgage," which purports to assign the Security Deed from MERS as

---

Olson of misrepresentation and of violating the Georgia Professional Rules of Conduct.

nominee for Primary Capital, to Aurora Bank (the "Assignment"). (*Id.* at ¶ 64.) The Assignment was recorded in the real property records of Gwinnett County, Georgia on September 29, 2011. (Compl. [1] at ¶ 65.) In the Assignment, MERS, as nominee for Primary Capital, purports to assign to Aurora Bank the following: "the said Mortgage," "all moneys now owing or that may become due or owing," and "the Assignor's beneficial interest under the Mortgage." (*Id.* at ¶ 66.) Plaintiffs allege that MERS lacked the authority to make the Assignment, and committed fraud in doing so. (*Id.* at ¶¶ 64-77.)

On August 26, 2011, McCurdy & Candler sent a final notice of foreclosure to Szczesniak (the "Final Foreclosure Notice Letter"). (*Id.* at ¶ 81.) Aurora Loan Services was identified as the "entity who has full authority to discuss, negotiate, or change all terms of the mortgage with [Szczesniak] concerning foreclosure. . . alternatives." (*Id.* at ¶ 88.) This letter included a copy of a "Notice of Sale under Power," which McCurdy & Candler sent to the Gwinnett Daily Post for publication. (Compl. [1] at ¶ 83.) Also on August 26, 2011, defendant McCurdy & Candler sent another notice pursuant to the Fair Debt Collection Practices Act. (*Id.* at ¶ 85.) Plaintiffs allege that these documents falsely identified Aurora Bank as being Szczesniak's "secured creditor." (*Id.* at ¶¶ 82, 84, 86.) On September 6, 2011, Aurora Bank, by and through McCurdy & Candler, foreclosed on the Property. (*Id.* at ¶ 87.)

4

On November 23, 2011, plaintiffs[2] filed suit against the above defendants in the Superior Court of Gwinnett County. (Compl. [1].) Defendants removed the action to this Court on January 3, 2012. (Notice of Removal [1].) Plaintiffs bring several causes of action against defendants. In addition to requests for various forms of declaratory and injunctive relief, which are styled as independent causes of action, plaintiffs bring claims for slander of title, quiet title, wrongful attempted foreclosure, wrongful foreclosure, intentional infliction of emotional distress, negligence, the violation of Georgia's Racketeer Influence and Corrupt Organizations Act, and attorneys' fees.

Plaintiffs also move for a temporary restraining order preventing defendants or their agents from proceeding with a nonjudicial foreclosure and dispossession until the matter is concluded, or discovery is completed. ([2].) Defendants move the Court to deny plaintiffs' request for a temporary restraining order and dismiss their complaint with prejudice. ([3].)

---

[2] Szczesniak is the only plaintiff who has any connection to defendants, as she was the one who is legally bound by the Note and Security Deed that gave rise to this litigation. As such, the Court has doubts that the Petersons are in a position to bring suit. Defendants do not raise this point, however, and the Court leaves the issue for future resolution.

AO 72A
(Rev.8/82)

I. **MOTION TO DISMISS**

    A. **Applicable Law**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for failure to state a claim for relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint is "plausible" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wooten*, 626 F.3d at 1196. In considering a motion to dismiss, a court should "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). A properly pled complaint must contain more than an "unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B. Analysis**

   **1.  Slander Of Title (Count IV)**

Under Georgia law, "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." O.C.G.A. § 51-9-11.  In order to sustain an action of this kind, the plaintiff must allege and prove "the uttering and publishing of the slanderous words; that they were false; that they were malicious; that he sustained special damage thereby; and that he possessed an estate in the property slandered." *Latson v. Boaz*, 278 Ga. 113, 114 (2004).  A person who asserts a claim of slander of title can "recover only such special damages as [they] actually sustained as a consequence of the alleged wrongful acts, and [they are] required to plead them plainly, fully, and distinctly." *Id.*

Here, plaintiffs' slander of title claim rests on the four publications advertising a foreclosure sale of the Property.  They appear to contend that defendants were not actually in a position to foreclose because the Assignment from MERS to Aurora Bank was fraudulent.  (Compl. [1] at ¶ 99.)  However, plaintiffs do not explain how the false identification of a creditor on a notice of foreclosure would slander <u>their</u> title and cause them special damages. In other words, even if Aurora Bank was not actually the legitimate owner of the Security Deed, plaintiffs have failed to allege how

7

Aurora Bank's asserted interest in the Property actually caused them any harm.  Not surprisingly, as plaintiffs had apparently ceased paying their mortgage, they could not claim that <u>no one</u> was in a position to foreclose on the Property.  They simply allege that these defendants were not the appropriate entities to reclaim property on whose mortgage the plaintiffs had defaulted.

In addition to a failure to allege that a foreclosure notice slandered their title, as plaintiffs were subject to foreclosure by someone, plaintiffs have also failed to adequately plead special damages.  Plaintiffs allege that they were prevented from the full enjoyment of their Property and from exercising their rights with respect to the Property, including their right to sell the Property, or to obtain mortgage loans secured by the Property.  (Compl. [1] at ¶ 102.)  These bare allegations are not sufficient to properly plead special damages.  *See Hicks v. McLain's Bldg. Materials, Inc.*, 209 Ga. App. 191, 192 (1993)("generalized allegations...that [plaintiffs] might have been hindered in obtaining credit as a result of the liens are insufficient to establish special damage"); *Latson*, 278 Ga. at 115 (special damages not adequately shown by assertions that slanderous publication of foreclosure caused humiliation and embarrassment); *M&M Mortg. Co., Inc. v. Grantville Mill, LLC*, 302 Ga. App. 46, 50 (2010)("General evidence that the lien hindered Grantville's ability to obtain a loan was also insufficient to

8

establish special damages."); *Harmon v. Cunard*, 190 Ga. App. 19 (1989)(insufficient proof of special damages premised on failure to obtain funds for completion of house and inability to sell house, where no specific figures offered for the damage allegedly suffered); *Ajouelo v. Auto-Soler Co.*, 61 Ga. App. 216, 222 (1939)("particular loss or injury must be distinctly stated, and the ad damnum clause, that the plaintiff has been damaged in the amount of $25,000, is not the equivalent of such an averment."); *Jackman v. Hasty*, Civil Action No. 1:10-CV-2485-RWS, 2011 WL 854878 (N.D. Ga. Mar. 8, 2011)(Story, J.)(dismissing claim for failure to allege special damages).

The failure to adequately plead special damages further dooms plaintiffs' claim for slander of title and it should be **DISMISSED**.

## 2. Quiet Title (Count V)

In order to state a claim for quieting title, a plaintiff must set forth:

> a particular description of the land to be involved in the proceeding, a specification of the petitioner's interest in the land, a statement as to whether the interest is based upon a written instrument...or adverse possession or both, a description of all adverse claims of which petitioner has actual or constructive notice, the names and addresses, so far as known to the petitioner, of any possible adverse claimant, and, if the proceeding is brought to remove a particular cloud or clouds, a statement as to the grounds upon which it is sought to remove the cloud or clouds.

O.C.G.A. § 23-3-62(b). Further, a complaint seeking to quiet title must be referred to a special master and also be accompanied by: "(1)

9

a plat of survey of the land, (2) a copy of the immediate instrument or instruments, if any, upon which the petitioner's interest is based, and (3) a copy of the immediate instrument or instruments of record or otherwise known to the petitioner, if any, upon which any person might base an interest in the land adverse to the petitioner." *Id.* at § 23-3-62(c); O.C.G.A. § 23-3-63 (providing for submission of quiet title petition to special master).

Plaintiffs have not filed a "plat of survey of the land," which is required by O.C.G.A. § 23-3-62(c)(1) as a prerequisite for quieting title. *See Mann v. Blalock*, 286 Ga. 541, 543 (2010) (upholding finding that quiet title was procedurally deficient because complaint did not include a plat of survey of the land); *Joseph v. CitiMortgage,* Civil Action File No. 1:11-CV-2768-TWT, 2011 WL 5156817, at *2 (N.D. Ga. Oct. 27, 2011)(Thrash, J.)(dismissing quiet title claim for failure to verify complaint and failure to file a plat survey of the land); *McFarland v. BAC Home Loans Servicing, LP*, Civil Action No. 1:11-CV-04061-RWS, 2012 WL 2205566, at *4 (N.D. Ga. June 14, 2012); *Simpson v. Countrywide Home Loans*, Civil Action File No. 1:10-cv-0224-CAM-ECS, 2010 WL 3190693, at *7-*8 (N.D. Ga. Apr. 26, 2010)(Scofield, Mag.)(dismissing claim for failure to comply with O.C.G.A. § 23-3-62.). Likewise, the Complaint does not make clear what cloud is presently over the title that plaintiffs claim needs to be quieted. Defendants sold the Property at a foreclosure

10

sale, and unless that sale is set aside, plaintiffs would appear to have no claim to the Property at all. *See Bellamy v. F.D.I.C.*, 236 Ga. App. 747, 749 (1999)("The purchaser [of] a foreclosure sale under a power of sale in a security deed is the sole owner of the property until and unless the sale is set aside."); *Womack v. Columbia Rentals, Inc.*, 223 Ga. App. 501, 503 (1997); *Hague v. Kennedy*, 205 Ga. App. 586, 588 (1993). For the above reasons, plaintiffs' claim for declaratory relief regarding the legal ownership of the Property is **DISMISSED**.

      3. <u>Attempted Wrongful Foreclosure (Counts VI, VII, & VIII)</u>

To succeed on a claim for wrongful attempted foreclosure, plaintiffs must show that foreclosure proceedings commenced, but were not completed, and that defendants made "a knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication." *Aetna Fin. Co. v. Culpepper*, 171 Ga. App. 315, 319 (1984). Plaintiffs allege that defendants MERS, Aurora Loan Servicing, and McCurdy & Candler wrongfully attempted to foreclose on the Property because MERS falsely identified itself as being Szczesniak's "secured creditor" and is not the "owner or the holder of the Note, and thus is not [Szczesniak's] creditor." (Compl. [1] at ¶¶ 112-113.) Plaintiffs, however, allege only that

11

MERS misrepresented itself as the secured creditor on the foreclosure notice. Plaintiffs do not allege that defendants published any "untrue" or "derogatory" statements about plaintiffs' financial condition. *See Austin v. Bank of Am., N.A.*, Civil Action No. 1:11-CV-3346-RWS, 2012 WL 928732, at *1 (N.D. Ga. Mar. 16, 2012)(Story, J.)(dismissing claim for wrongful attempted foreclosure where plaintiffs did not allege that defamatory statements were published against them). As such, they have failed to state a plausible claim for relief, and their claims for attempted wrongful foreclosure are due to be **DISMISSED**.

### 4. Wrongful Foreclosure (Count IX)

To state a claim for wrongful foreclosure, plaintiffs must allege that "a legal duty [was] owed to [them] by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury [they] sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 371 (2004). A foreclosing party has the duty to exercise fairly the power of sale in a deed to secure debt under O.C.G.A. § 23-2-114. *See Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 285 (1994). "A claim for wrongful exercise of a power of sale under O.C.G.A. § 23-2-114 can arise when the creditor has no legal right to foreclose." *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 449 (2008). Further, a bank's "failure to provide proper notice constitute[s] a breach of

12

the duty to fairly exercise the power of sale created by § 23-2-114."
*Calhoun*, 264 Ga. at 286.

Plaintiffs' counsel spends more pages in his response brief leveling *ad hominem* attacks on the defendants and opposing counsel than mounting a coherent explanation of the reasons why the motion to dismiss should not be granted. As best the Court can determine from the disparate observations strung together in this response, plaintiffs are arguing that defendants were not the secured creditors because they held only the security deed, not the promissory note. If the defendants were not the secured creditors, then they would not have been empowered to foreclose on plaintiffs' property.

This is a familiar argument that is often repeated by debtors who have defaulted on their mortgage payments, but who nonetheless seek to delay and prevent foreclosure of property on which they have ceased to make payments. There is a split of authority in this district, with the majority of judges ruling that a secured creditor is the party holding the security deed, and a minority of the judges holding that it is only the holder of the promissory note who occupies that position. The Court has recently certified this question to the Georgia Supreme Court, as well as the related question concerning whether the secured creditor must be identified in the foreclosure notice. *See Chae Yi You and Chur K. Back v.*

*JPMorgan Chase Bank, N.A., and Fed. Nat'l Mortg. Assoc.*, 1:12-cv-202-JEC-AJB (Order and Op. [15] and Order [16] dated Sept. 7, 2012).

Accordingly, pending resolution of this question by the Georgia Supreme Court, the Court **DENIES WITHOUT PREJUDICE** defendants' Motion to Dismiss plaintiffs' claim for wrongful foreclosure. As this is the only substantive claim remaining following issuance of this Order, the case will also be stayed pending that resolution.

     5.   <u>Intentional Infliction Of Emotional Distress (Count X)</u>

To assert a claim for intentional infliction of emotional distress, plaintiffs must show "(1) the conduct giving rise to [the distress] was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Blue View Corp. v. Bell*, 298 Ga. App. 277, 279 (2009)(citing *Frank v. Fleet Fin., Inc. of Ga.*, 238 Ga. App. 316, 317-18 (1999)). Plaintiffs' claim for intentional infliction of emotional distress is nothing more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, [and will] not suffice." *Iqbal*, 556 U.S. at 678. They merely assert that defendants caused them emotional distress, but fail to give any exposition of how defendants' behavior was extreme and outrageous, or how severe the distress was. Dismissal is appropriate.

14

Moreover, an injured party in a wrongful foreclosure action may recover damages for mental anguish, upon a showing akin to the high standards for demonstrating intentional infliction of emotional distress. *See DeGolyer*, 291 Ga. App. at 449. In this regard, plaintiffs' claim for intentional infliction of emotional distress seems largely subsumed by their claim for wrongful foreclosure. Plaintiffs' claim for intentional infliction of emotional distress is therefore **DISMISSED**.

      6.   <u>Negligence (Count XI)</u>

Plaintiffs' negligence claim is largely based on a generalized duty to behave in a fair and reasonable manner towards them with respect to the Note and Security Deed. (Compl. [1] at ¶ 149.) In explaining how defendants allegedly breached this duty, plaintiffs rely on much of the same conduct offered in support of their claim for wrongful foreclosure. As such, plaintiffs' claim for negligence is better understood as a claim for wrongful foreclosure and this claim is **DISMISSED**.

      7.   <u>Georgia R.I.C.O. (Count XII)</u>

Defendants do not directly challenge plaintiffs' claim for the violation of the Georgia R.I.C.O. statute. Nonetheless, dismissal is appropriate. The Georgia R.I.C.O. statute makes it unlawful for any person, "through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly,

15

any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a). "Pattern of racketeering activity" is defined as "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents...." O.C.G.A. § 16-14-3(8)(A). "Racketeering activity" means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment" under certain laws of the State of Georgia or certain acts or threats chargeable under the laws of the United States or any of the several states and punishable by imprisonment for more than one year. O.C.G.A. § 16-14-3(9).

In this case, plaintiffs allege that defendants have committed "at least two acts" of racketeering activity--fraud. (Compl. [1] at ¶¶ 156-57.) In support of this allegation, plaintiffs repeat their claims that defendants committed fraud by creating forged assignments and using these as a basis for seeking foreclosure. (*Id.* at ¶ 57.) However, if a plaintiff raises fraud claims, or R.I.C.O. claims based on predicate acts of fraud, the plaintiff "must comply not only with the plausibility [standard] articulated in *Twombly* and *Iqbal*, but

16

also with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard." *Am. Dental Ass'n*, 605 F.3d at 1291. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant[s'] allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)(quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002)(internal quotation marks omitted)). The allegations of "fraud" upon which plaintiffs rely fall short of this heightened standard. They refer vaguely to the creation of forged assignments, and the use of these fraudulent assignments in various ways, but do not set forth the "time, place, and substance" of the fraud. *See Jenkins v. McCalla Raymer, LLC*, Civil Action File No. 1:10-CV-03732-CAP-AJB, 2011 U.S. Dist. LEXIS 95652, at *79-*95 (N.D. Ga. July 28, 2011)(Baverman, Mag.) (recommending dismissal of R.I.C.O. claims for failure to comply with requirement to plead with particularity), *adopted by* Order of Aug. 31, 2011, 1:10-CV-03732-CAP (Pannell, J.). Plaintiffs' claim for a violation of the Georgia R.I.C.O. statute is **DISMISSED**.

8.  <u>Expenses Of Litigation And Attorneys' Fees (Count XIII)</u>

Because plaintiffs' claim for wrongful foreclosure has been stayed, pending resolution of the certified questions by the Georgia Supreme Court, plaintiffs' claim for the expenses of litigation and attorneys' fees under O.C.G.A. § 13-6-11 is also **DENIED without prejudice**.

## II.  <u>INJUNCTIVE AND DECLARATORY RELIEF</u>

### A.  **Injunctive Relief Enjoining Foreclosure Sale And Eviction**

Plaintiffs move the Court to enter an order temporarily restraining defendants from foreclosing on the Property or conducting an eviction. (*See* Mot. for TRO [2].) They also seek a preliminary and permanent injunction prohibiting defendants from doing so, as well as an additional prohibition on listing or advertising the Property for sale, or selling the Property while the action is pending. (Compl. [1] at ¶¶ 91-94.) In Count III, plaintiffs also ask the Court to cancel the Assignment from MERS to Aurora Bank. (*Id.* at ¶¶ 95-97.)

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974). To obtain injunctive relief, plaintiffs must demonstrate:

18

>(1) a substantial likelihood of success on the merits of
>the underlying case, (2) the movant will suffer irreparable
>harm in the absence of an injunction, (3) the harm suffered
>by the movant in the absence of an injunction would exceed
>the harm suffered by the opposing party if the injunction
>[is] issued, and (4) an injunction would not disserve the
>public interest.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d

1242, 1246-47 (11th Cir. 2002); *Northeastern Fla. Chapter of Ass'n of*

*Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285

(11th Cir. 1990)(plaintiff bears burden of showing all four

elements). As explained above, with the exception of plaintiffs'

claim for wrongful foreclosure and attorneys' fees, plaintiffs have

failed to state a claim for relief in their complaint. As such, they

have not shown a substantial likelihood of success on these claims

and any injunctive relief premised on them is **DENIED**. *Montoya v.*

*Branch Banking & Trust Co.*, Civil Action No. 1:11-CV-01869-RWS, 2012

WL 826993, at *8 (N.D. Ga. Mar. 9, 2012)(Story, J.)(denying request

for TRO where plaintiff failed to state a viable claim).

As to plaintiffs' claim for wrongful foreclosure, which has been

stayed pending resolution of the certified questions by the Georgia

Supreme Court, the undersigned finds more meritorious the majority

position in this district, than the minority position. That is, the

Court finds more meritorious the position that the holder of the

security deed is the secured creditor. For that reason, the Court

19

concludes that plaintiffs have not shown a likelihood of success on this claim.

Even if this claim appeared viable, a foreclosure sale of the Property has already occurred, and plaintiffs' request to enjoin the sale is therefore **DENIED as moot**.[3] Further, plaintiffs' related request to prohibit advertisement or sale is also **DENIED as moot**.

This leaves plaintiffs' request for an order enjoining defendants from pursuing their eviction. According to defendants' Reply Brief, they prevailed in the Magistrate Court of Gwinnett

---

[3] Even if this request was not moot, a debtor who executes a security deed and defaults on a loan cannot enjoin foreclosure, or otherwise obtain equitable relief to cancel the deed, unless the debtor has first paid or tendered the amount due on the loan. *Taylor, Bean & Whitaker Mortg. Corp. v. Brown,* 276 Ga. 848, 850 (2003). *See also Hill v. Filsoof,* 274 Ga. App. 474, 475 (2005)("'Before one who has given a deed to secure his debt can have set aside in equity a sale by the creditor in exercise of the power conferred by the deed, and injunction to prevent interference with the debtor's possession of the property conveyed by the deed, he must pay or tender to the creditor the amount of principal and interest due.'")(quoting *Coile v. Fin. Co. of Am.,* 221 Ga. 584, 585 (1965)); *Smith v. Citizens & S. Fin. Corp.,* 245 Ga. 850, 852 (1980) ("Appellants have made no tender of the indebtedness secured by the deed to secure debt and thus are not entitled to set aside the sale under power."); *Mickel v. Pickett,* 241 Ga. 528, 535 (1978)("A borrower who has executed a [security deed] is not entitled to enjoin a foreclosure sale unless he first pays or tenders to the lender the amount admittedly due.").

This is an application of the more general principle that "[h]e who would have equity must do equity." O.C.G.A. § 23-1-10. According to defendants, plaintiffs ceased paying their mortgage in April 2011. Plaintiffs have not disputed that they are in default, nor have they offered to tender the full amount due. Therefore, an injunction would be improper.

County on a dispossessory action to evict the plaintiffs; as of the date of the filing of this brief, in February 2012, this ruling was on appeal by the plaintiffs in the Superior Court of Gwinnett County. (Reply Br. [6] at 2 n.1.)  As such, plaintiffs' request for this Court to enjoin the ongoing dispossessory action is barred by the Anti-Injunction Act, 28 U.S.C. § 2283.

The Anti-Injunction Act provides that a federal court may not enjoin proceedings in a state court unless it falls within one of three exceptions: (1) the injunction is expressly authorized by Act of Congress, (2) the injunction is "necessary in aid of [the court's] jurisdiction," or (3) the injunction is necessary "to protect or effectuate [the court's] judgment[]."  28 U.S.C. § 2283.  The prohibition against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions, is absolute.  *See Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).

None of the three exceptions apply here, and the Anti-Injunction Act thus bars the relief plaintiffs seek.  *See Wideman v. Bank of Am., N.A.*, No. 3:12-cv-6 (CAR), 2012 WL 827117, at *1-*2 (M.D. Ga. Mar. 9, 2012)(Royal, J.)(denying TRO interfering with state court eviction proceeding); *Boross v. Liberty Life Ins. Co.*, No. 4:10-cv-144, 2011 WL 2945819 (S.D. Ga. July 21, 2011)(Edenfield, J.)(declining to find exception to Anti-Injunction Act for request to

21

enjoin dispossessory action); *First Fed. Sav. & Loan Ass'n of Warner Robins v. Ohio Valley Sav. & Loan Ass'n*, 666 F. Supp. 215 (M.D. Ga. 1987); *Lawrence v. JP Morgan Chase Bank, N.A.*, No. 10-81631-CIV, 2011 WL 2039097 (S.D. Fla. May 25, 2011)(Marra, J.); *Bradley v. Fed. Nat'l Mortg. Ass'n*, Civil Action No. 1:11-CV-3242-TWT-CCH, 2011 WL 5320746 (N.D. Ga. Sept. 28, 2011)(Hagy, Mag.).[4]

Moreover, injunctive relief is not proper for an additional reason. Federal Rule of Civil Procedure 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Plaintiffs contend that the Court should look to state

_____

[4] Assuming that there has not yet been a final state court adjudication of the eviction proceeding, defendants' reliance on the *Rooker-Feldman* doctrine in support of their argument that the Court is not permitted to enjoin any dispossessory action is misplaced. This doctrine, which "recognizes that federal district courts do not have jurisdiction to act as appellate courts and precludes them from reviewing final state court decisions," first requires that the parties reach a judgment in a state court proceeding before the district court proceedings commence. *See Paletti v. Yellow Jacket Marina, Inc.*, 395 Fed. App'x 549, 553 (11th Cir. 2010); *Mickens v. Tenth Judicial Circuit*, 181 Fed. App'x 865, 873 (11th Cir. 2006) (noting that *Rooker-Feldman* doctrine requires that state court judgment be rendered before district court proceedings commenced). It is not clear whether the dispossessory action has reached a final resolution yet and the doctrine's applicability is in question. Nonetheless, an injunction is improper for the other reasons discussed above.

AO 72A
(Rev.8/82)

law, where the suit was originally filed, which gives the judge discretion to require security. (Resp. Br. [5] at 7-8.) However, a federal court is bound by the Federal Rules of Civil Procedure, which requires security. Assuming, however, that the Court would have discretion in appropriate circumstances to forego this security requirement, it would not do in this case where plaintiffs appear to have been living rent-free for 17 months on property that they have ceased making payments on. Because plaintiffs have not offered to pay any security, a preliminary injunction is improper. *See Wideman*, 2012 WL 827117, at *2 (denying TRO when plaintiff failed to offer security); *Jackman*, 2011 WL 854878, at *1 (same).

**B.    Injunctive Relief To Order Cancellation Of Assignment**

In Count III of plaintiffs' Complaint, they ask that the Court order the cancellation of the Assignment because it is a "forgery" and "fraudulent," because MERS did not have a written power of attorney that authorized them to make the Assignment. (Compl. [1] at ¶¶ 95-97.) The Assignment was between MERS and Aurora Bank. Plaintiff is a third-party and would appear to lack standing to challenge the assignment. In fact, courts have repeatedly rejected the argument that a homeowner has standing to challenge the assignment of a security deed which grants the assignor a power of sale. *See Breus v. McGriff*, 202 Ga. App. 216, 216 (1991)("Appellants are strangers to the assignment contract between appellee and [Bank]

23

and thus have no standing to challenge its validity."); *Bandele v. Deutsche Bank Nat'l Trust Co.*, Civil Action File No. 1:11-CV-4257-TWT, 2012 WL 1004990, at *2 (N.D. Ga. Mar. 22, 2012)(Thrash, J.) (same). *But see Sutton v. Bank of Am., N.A.*, Civil Action No. 1:11-CV-3765-CAP, 2012 WL 2394533, at *5 (N.D. Ga. Apr. 11, 2012) (Pannell, J.)(rejecting argument that plaintiff debtor lacks standing to challenge assignment). Plaintiffs' request to cancel the Assignment is **DENIED**.

Finally, to the extent plaintiffs are requesting a permanent injunction, they must first show *actual* success on the merits of their claim. *See KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006)(emphasis added). They have not. For these reasons, plaintiffs' request for injunctive relief are **DENIED**.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion for a Temporary Restraining Order [2] should be **DENIED** and the defendants' Motion to Dismiss [3] should be **GRANTED in part** and **DENIED in part**. That is, all of plaintiffs' claims are dismissed, except for the claim for wrongful foreclosure and attorneys' fees. Defendants' motion to dismiss those claims are **denied without prejudice** and they are stayed pending resolution of dispositive questions certified to the Georgia Supreme Court.

24

SO ORDERED, this <u>10th</u> day of September, 2012.


                                    /s/ Julie E. Carnes
                                    JULIE E. CARNES
                                    CHIEF UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)